NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1071

CATHERINE MCDONNELL[1] & others[2]

vs.

221-227 COMMERCIAL STREET LLC & others.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This is an appeal from a Land Court judgment affirming the

decision by the Boston board of appeal (board) to grant a

conditional use permit under § 54-18 of the Boston zoning code

---

[1] Individually and as trustee of the Prince Condominium Trust.

[2] Jennifer Crampton, individually and as trustee of the Crampton Family Holding Trust and the Prince Condominium Trust; Ann Moritz, individually and as trustee of the Prince Condominium Trust; Peter Murley, individually and as trustee of the Macaroni Factory Realty Trust and the Prince Condominium Trust; C. Michael Malm, individually and as trustee of the Prince Condominium Trust; John Cuoco; Richard Bendetson, individually and as a beneficial owner of the Prince Office Trust; Chris Tuite; Cynthia Finley; Richard B. Jacobs, individually and as trustee of the Richard B. Jacobs 2000 Revocable Trust; Ilene B. Jacobs, individually and as trustee of the Ilene B. Jacobs 2000 Revocable Trust; John Alexiou, Peter L. Goedecke, Adrienne Dion, and Brendan Caley Sullivan, individually and as trustees of the Howe and Bainbridge Condominium Trust. Two of the plaintiffs, Bendetson and Goedecke, have not joined in this appeal.

[3] Richard Walsh and the board of appeal of Boston.

(code).[4]  The central issue is whether the board's interpretation of § 54-18 was reasonable.  More specifically, the question is whether the board could reasonably conclude that § 54-18 did not require that the applicant obtain a variance as opposed to a conditional use permit.  We affirm.

In February 2021, Richard Walsh and 221-227 Commercial Street LLC (the developers) sought relief from the board to construct a fifty-three and one-half foot tall, six-unit residential condominium on a vacant lot located at the intersection of Commercial Street and Atlantic Avenue in the North End.  A former laundromat and a gas station had previously stood on the lot; the taller of these two buildings had been eighteen feet tall as of June 24, 1985.  Section 54-18, fourth par., limits the height of new development to the maximum height of any building on the lot as of June 24, 1985; accordingly, the developers needed, and sought, relief from the board to exceed the height of the former buildings.

The board granted a conditional use permit to the developers on April 20, 2021.  The plaintiffs, who are fifteen trustees, unit owners, and residents of two buildings abutting the proposed construction, appealed the board's decision,

_____

[4] The case was originally filed in the Superior Court, but was then assigned to the Land Court by the Chief Justice of the Trial Court.

2

pursuant to § 11 of the Boston Zoning Enabling Act, St. 1956, c. 665, as amended by St. 1993, c. 461. The plaintiffs claimed that the project would significantly restrict light and air flow to their properties and impact their existing views. On cross motions for summary judgment, the Land Court judge determined that the language of § 54-18 was ambiguous. The judge deferred to the board's interpretation that § 54-18 required only a conditional use permit, not a variance, because the judge concluded that the board's interpretation was reasonable.[5] This appeal followed.

The only issue before us is whether § 54-18 requires the developers to obtain a variance, as the plaintiffs allege, or merely a conditional use permit, as the board concluded. "We review interpretations of zoning bylaws de novo and according to traditional rules of statutory construction." Pinecroft Dev., Inc. v. Zoning Bd. of Appeals of West Boylston, 101 Mass. App. Ct. 122, 128 (2022). "With respect to conclusions regarding interpretations of a zoning ordinance and their application to the facts, an appellate court remains 'highly deferential'" to the board's decision, even if the facts would support the opposite determination. Wendy's Old Fashioned Hamburgers of

---

[5] The parties filed a joint motion for entry of judgment pursuant to Rule 10 of the Rules of the Land Court after the judge partially allowed the defendants' motion for summary judgment.

3

N.Y., Inc. v. Board of Appeal of Billerica, 454 Mass. 374, 383 (2009), quoting Britton v. Zoning Bd. of Appeals of Gloucester, 59 Mass. App. Ct. 68, 74 (2003). "The board's interpretation is not dispositive. . . . Where the board's interpretation is reasonable, however, the court should not substitute its own judgment." Tanner v. Board of Appeals of Boxford, 61 Mass. App. Ct. 647, 649 (2004).

The paragraph of § 54-18 at issue -- which is set forth in full below and, like the entirety of § 54 of the code, only applies to the North End -- requires board "approval" to build a new building taller than the height of any building existing on the particular lot as of June 24, 1985.[6] "Approval," for purposes of this provision, is undefined. The language does not explicitly say whether approval in the form of a variance is required or whether approval in the form of a conditional use

---

[6] "The height of any building existing as of June 24, 1985, shall determine the allowed building height on that lot subsequent to total or partial demolition or destruction of such building. Any proposed construction on the lot that would exceed the prior height shall require Board of Appeal approval, and shall be subject to the roof structure and building height restrictions of this [§] 54-18 and the height limits applicable to the subdistrict in which the lot is located. In making its decision, the Board of Appeal shall consider whether such roof structure has the potential for significantly restricting light and/or air flow to adjacent structures and/or significantly restricting views from roofs, windows, doors, or balconies. Notwithstanding anything in Article 2A respecting the definition of the term 'grade,' if a building abuts more than one street, 'grade' is the average elevation of the street with the lowest elevation." Code § 54-18, fourth par.

4

permit suffices.[7]  The term was thus open to reasonable interpretation by the board.

The plaintiffs argue that, along with a general presumption that a violation of a dimensional restriction (such as height) requires a variance, the lack of explicit language authorizing the board to issue a conditional use permit precluded the board from granting such relief.  The plaintiffs contend that the code generally states explicitly when a conditional use permit is appropriate, and, as an example, point to the first two paragraphs of § 54-18 itself, which state that conditional use permits are the proper relief for nonconforming roof structures.  See e.g., code § 36-8 (prohibiting construction or enlargement of rooftop additions on existing buildings without conditional use permit); code § 16-4 (allowing board to grant conditional use permits for buildings exceeding maximum height limit in districts zoned as H-1-40 and H-1-50).  The thrust of the plaintiffs' argument is that the drafters of the code, by omitting reference to conditional use permits from the language of the fourth paragraph of § 54-18, intended for applicants in the developers' position to seek a variance.

---

[7] Other paragraphs of § 54-18, relating primarily to roof structures, explicitly require applicants to obtain a conditional use permit before building nonconforming roof structures.

We are not persuaded. The plaintiffs' interpretation would essentially render superfluous and meaningless not only the final clause of the second sentence of § 54-18, fourth par., but also the entire third sentence of the paragraph. The board could reasonably avoid adopting a reading that would lead to that result. See Lee v. Board of Appeals of Harwich, 11 Mass. App. Ct. 148, 154 (1981), quoting Roblin Hope Indus. v. J.A. Sullivan Corp., 6 Mass. App. Ct. 481, 486 (1978) (noting "well established rule of statutory construction that 'none of the words [of the statute or by-law] should be regarded as superfluous'").

Specifically, the second sentence of § 54-18, fourth par., makes board approval dependent on two conjunctive requirements: that the proposed construction be "subject to the roof structure and building height restrictions of [§] 54-18 and the height limits applicable to the subdistrict in which the lot is located" (emphasis added), which are contained in § 54, table C. In this case, the first clause results in a height restriction of eighteen feet, since that was the maximum height of the structures in place as of June 24, 1985, and the second clause results in a height restriction of fifty-five feet because that is the general height restriction for the North End district. The "job of a coordinating junction like 'and'" is to link independent ideas. Bruesewitz v. Wyeth LLC, 562 U.S. 223, 236

6

(2011). The plaintiffs' reading disregards the second clause by making it superfluous or alternative to, rather than conjunctive with, the first clause. There is good reason to read the sentence in the conjunctive, as it was written, because a building can violate the height limit of § 54-18 without necessarily violating the subdistrict height limit. The project at issue here is an example of just such a situation. There is nothing to suggest that the drafters of the code intended for the stringent variance framework to apply to proposed buildings below the maximum height limit generally applicable to the North End simply because they exceed a lower height limit resulting from application of § 54-18, fourth par.

Similarly, the third sentence of § 54-18, fourth par., sets out specific factors the board is to consider in approving a proposed project whose height will exceed that of a previous building on the lot. Specifically, the third sentence provides that the board must consider whether any roof structure subject to § 54-18 "has the potential for significantly restricting light and/or air flow to adjacent structures and/or significantly restricting views from roofs, windows, doors, or balconies." Whatever else might be said about these considerations, they bear no resemblance to those required for

7

the granting of a variance, which we have set out in the margin.[8]

Accordingly, to adopt the plaintiffs' view that § 54-18, fourth par. requires a variance would require us to also adopt one of two equally undesirable conclusions. We would be required to either conclude that the third sentence is surplusage because it is at odds with the statutory requirements for a variance, or to conclude that the third sentence supplants the statutory requirements for a variance. It was perfectly reasonable for the board to avoid either of these undesirable results. See Ryan v. Mary Ann Morse Healthcare Corp., 483 Mass. 612, 622 (2019) (statutes should be read harmoniously, not in manner to create conflict); Recinos v. Escobar, 473 Mass. 734, 742-743 (2016) (statute should be read to avoid surplus language).

It follows from what we have said above that it was reasonable for the board to determine that a conditional use

_____

[8] "The permit granting authority shall have the power . . . to grant . . . a variance from the terms of the applicable zoning ordinance or by-law where such permit granting authority specifically finds that owing to circumstances relating to the soil conditions, shape, or topography of such land or structures and especially affecting such land or structures but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the petitioner or appellant, and that desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law."  G. L. c. 40A, § 10.

permit was the proper form of relief under § 54-18.  See Tanner, 61 Mass. App. Ct. at 649.

Judgment affirmed.

By the Court (Green, C.J.,
Wolohojian &
Sullivan, JJ.[9]),

*Joseph F. Stanton*

Clerk

Entered:  June 15, 2023.

---

[9] The panelists are listed in order of seniority.